# Federal Bureau of Investigation Participation in Wire Interceptions in Cases Where It Lacks Investigative Responsibility

Under 18 U.S.C. § 2516(1), the Federal Bureau of Investigation (FBI) may be judicially authorized to participate in Title III interceptions of wire or oral communications directed at narcotics-related offenses, even though the Drug Enforcement Administration and not the FBI has general investigative responsibility for such offenses.

The plain language of § 2516(1) authorizes the FBI to participate in court-approved interceptions directed at any of the offenses listed in that section, and the legislative history lends support to its "plain meaning" interpretation.

September 29, 1981

## MEMORANDUM OPINION FOR THE ASSISTANT DIRECTOR FOR LEGAL COUNSEL, FEDERAL BUREAU OF INVESTIGATION

This responds to your request for our opinion whether, pursuant to 18 U.S.C. § 2516(1)(1976 and Supp. IV 1980), the Federal Bureau of Investigation (FBI) may be authorized by a court to participate in Title III interceptions directed at offenses for which the FBI has no general investigative responsibility. This legal question has arisen in the context of investigations of narcotics-related offenses over which the Drug Enforcement Administration (DEA)—not the FBI—has been delegated general investigative responsibility by the Attorney General. *See* United States Attorneys' Manual, Section 9-1.122 (Oct. 17, 1977); 21 U.S.C. § 871(a). In particular, in a case in which the DEA seeks authorization for an interception directed at narcotics offenses, and in which there is no probable cause to seek authorization for in interception directed at other offenses for which the FBI has general investigative responsibility, the question is whether the FBI as well as the DEA may be authorized to participate in an interception. If, as the FBI's Legal Counsel Division has concluded, the FBI can participate in a Title III interception only when it has general investigative responsibility for the offense at which the interception is directed, then the FBI could not be authorized by a court to participate in an interception in such a case.[1]

---

[1] The Attorney General could, if he chose to do so, delegate general investigative jurisdiction over narcotics-related offenses to the FBI. *See* 21 U.S.C § 871(a). Unless he does so, however, such jurisdiction remains with the DEA. [NOTE: In February of 1982, the Attorney General authorized the
Continued

286

# I.

In our view, § 2516(1) provides authority for the FBI to participate in interceptions in such a case directed at any of the offenses listed in that provision, including narcotics-related offenses, so long as all of the specific procedural requirements of § 2516(1) are satisfied. We conclude that it is not necessary for the FBI to have general investigative responsibility for such offenses before it may participate in court-approved § 2516(1) interceptions directed at them. The basis for this conclusion is the plain language of § 2516(1), which provides in pertinent part:

> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when interception may provide or has provided evidence of—
>
> \* \* \* \* \*
>
> (e) any offense involving . . . the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs, marihuana, or other dangerous drugs, punishable under any law of the United States . . .

The foregoing language specifically provides that an application may be made to a court for an order approving an interception "by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of" the listed offenses. In literal terms, this language authorizes the FBI to participate in court-approved interceptions directed at the listed offenses.

An interpretation leading to the contrary result would depend on the premise that the clause within the commas—"or a Federal agency having responsibility for the investigation of the offense as to which the application is made,"—refers to the FBI as well as other federal agencies, thereby requiring the FBI itself to have "responsibility" for the investigation of any offense as to which an interception application is made. That premise lacks specific textual support.[2] We also believe it to

___

FBI, concurrently with the DEA, to investigate violations of the criminal drug laws of the United States. *See* Att'y Gen. Or. No. 968-82, 47 Fed. Reg. 4989 (1982). Ed.

[2] A cardinal principle of statutory construction is that the language used by Congress is to be given primary weight *See, e.g., Southeastern Community College* v *Davis,* 442 U.S. 397, 405 (1979); *Interna-*
Continued

be contrary to the natural inference to be drawn from the placement of commas around the clause referring to a federal agency having investigative "responsibility," which renders that clause clearly a subordinate, self-contained part of the sentence. No language renders the subordinate clause an express qualification on the sentence's main proposition that the FBI may be authorized to participate in interceptions directed at the listed offenses. It would have been simple to provide, had it been Congress' intent to do so, that the FBI may participate in court-approved interceptions only in those instances where it has investigative "responsibility" for a given offense and not in those where another federal agency has such "responsibility." [3]

## II.

Section 2516(1)'s legislative history lends support to its "plain meaning" interpretation. The Senate Judiciary Committee report, S. Rep. No. 1097, 90th Cong., 2d Sess. 97 (1968), explains § 2516(1) as follows:

> The order of authorization may permit the Federal Bureau of Investigation or the Federal agency having responsibility for the investigation of the offense involved to intercept the wire or oral communication. The Department of Justice under the leadership of the Attorney General must be the central focal point of any drive against organized crime, particularly in the collection, analysis, and dissemination of information. It is appropriate that no limitation be placed on the investigations in which the investigative arm of the Department may participate. Organized crime has not limited itself to the commission of any particular offense. No limitation should be placed on the Department of Justice.

This passage speaks of possible judicial authorization of interceptions by "the Federal Bureau of Investigation or the Federal agency having responsibility for the investigation of the offense. . . ." It does not indicate that the FBI must have general investigative responsibility for a given offense before it may be authorized under § 2516(1) to participate in an interception directed at such an offense. Moreover, by stating that "no limitation" should be placed on the investigations in which the investigative arm of the Department of Justice may participate (other

---

*tional Brotherhood of Teamsters* v. *Daniel,* 439 U.S. 551, 558 (1979). A court is not "at liberty to imply a condition which is opposed to the explicit terms of the statute. . . To [so] hold . . . is not to construe the Act but to amend it." *Detroit Trust Co.* v. *The Thomas Barlum,* 293 U.S. 21, 38 (1934), *quoted in Fedorenko* v. *United States,* 449 U.S. 490, 514 (1981).

[3] Section 2516(1)'s intention regarding the identity of the agencies that may execute an interception order is taken for granted in J. Carr, The Law of Electronic Surveillance, § 5.02 at 243 (1977), which merely quotes the provision's language in identifying such agencies: " 'the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made.' "

than, presumably, any limitation mandated by the statutory language), the report underscores the importance placed by the Committee on the FBI's ability generally to participate in court-approved interceptions under § 2516(1). To derive from § 2516(1) a specific limitation on the FBI's authority to participate in interceptions that is not explicitly set forth in the provision would appear inconsistent with this legislative intent.[4]

Additional support for the "plain meaning" interpretation of § 2516(1) derives from a study of predecessor wiretap bills. S. 1308, introduced in the 88th Cong., 1st Sess. (1963), provided in pertinent part that the Attorney General or a specially designated Assistant Attorney General may authorize an application for judicial permission for "the Federal Bureau of Investigation, or any federal agency having investigative responsibility for the crimes set forth in this subsection," to conduct interceptions. The legislative history of S. 1308 includes a letter to the Chairman of the Senate Judiciary Committee from the General Counsel of the Department of the Treasury, dated July 2, 1963, which discusses this provision of S. 1308. The General Counsel objected to the fact that under the provision *either* the FBI *or* the agency charged with investigating the listed offenses—in particular, with investigating narcotics offenses, which then was the responsibility of the Treasury—could be authorized by a court to conduct interceptions. He stated that such "overlapping of authority would be undesirable. . . ." To prevent such an overlap, the General Counsel proposed alternative language providing that the FBI or another agency, "whichever has the investigative responsibility for a crime set forth in this subsection," may be judicially authorized to conduct an interception.[5] That alternative language was not adopted by Congress.

Furthermore, the two bills acknowledged in the legislative history of § 2516(1) as the main sources of the wiretap legislation that was enacted—S. 675 and S. 2050, 90th Cong., 1st Sess. (1967)[6]—differed in a crucial respect in the wording of the relevant provision. S. 675 provided that "the Federal Bureau of Investigation, or *other* Federal agency . . ." having investigative responsibility for certain offenses

---

[4] The broad principle that "no limitation" should be placed on the FBI's ability to participate in interceptions is not inconsistent with the decision by the Attorney General, pursuant to 21 U.S.C. § 871(a), to delegate general investigative jurisdiction over narcotics-related offenses to the DEA. The broad principle stated in the Senate committee report expresses the intent underlying § 2516(1), not the intent underlying other statutes such as 21 U S.C. § 871(a). The latter statute authorizes the Attorney General to "delegate any of his functions under this subchapter to any officer or employee of the Department of Justice."

[5] The 1963 letter was later printed in *Criminal Laws and Procedures: Hearings on S. 2187, S. 2188, S. 2189 et al. before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary,* 89th Cong., 2d Sess. 10–11 (1966).

[6] *See* S. Rep No. 1097, 90th Cong., 2d Sess. 66 (1968) ("Title III is essentially a combination of S. 675 . . . and S. 2050. . . ."); 114 Cong. Rec 11755 (1968). S. 675 and S. 2050 are printed in *Controlling Crime Through More Effective Law Enforcement: Hearings on S. 300, S. 552, S. 580 et al. before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary,* 90th Cong., 1st Sess. 76, 1003 (1967).

may be authorized *to conduct an interception directed at them* (emphasis added). The use of the word "other" in the quoted phrase suggests that the FBI would have had to have general investigative responsibility for the listed offenses. Otherwise, it would have made no sense to refer to another federal agency as the "other" agency having such responsibility. However, the word "other" was *not* included in S. 2050, which spoke instead of "the Federal Bureau of Investigation, or *a* Federal agency . . . ." having investigative responsibility (emphasis added). The pertinent language of S. 2050—*not* that of S. 675—was ultimately enacted.

Thus, the legislative history of § 2516(1) supports the conclusion derived from the provision's plain language that Congress intended that the FBI may be judicially authorized to engage in an interception directed at any of the listed offenses, including narcotics offenses.

### III.

This interpretation of § 2516(1) must be tested against the contrary arguments advanced in the memorandum of the FBI's Legal Counsel Division. The memorandum relies not on the provision's language or legislative history, but rather on a reading of *United States* v. *Marion,* 535 F.2d 697 (2d Cir. 1976), and on an argument said to be based on the general purposes of Title III.

The Legal Counsel Division's memorandum summarizes the *Marion* holding as follows:

> In focusing on the investigative interests at the time of interception, the *Marion court requires separate orders, each justifying the agency's investigative jurisdiction,* before interception is permitted. (Emphasis added.)

This reading of *Marion* suggests that under that decision each agency must have general "investigative jurisdiction" over an offense before it may participate in an interception under § 2516(1). However, we are unable to find support for such a reading in the opinion itself. The precise issue in *Marion* was whether the requirement of 18 U.S.C. § 2517(5) for subsequent judicial approval of incidental interceptions of communications relating to offenses other than those specified in an initial wiretap authorization applies to wiretaps initially authorized by an order of a state court.[7] The court of appeals held that, in such cases, the requirement of § 2517(5) does apply. The court explained:

---

[7] Section 2517(5) provides:

When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. *Such contents and any evidence derived therefrom may be used under subsection (3) of this section when*

Continued

. . . our holding does not 'call into question' the practice of joint federal-state wiretap investigations. Indeed, Title III's framers seem to have specifically envisioned co-operation among law enforcement authorities of different jurisdictions where appropriate to enhance the effective-ness of electronic surveillance operations . . . . If, for example, federal officials called into an ongoing state wiretap operation learned at that time of communications relating to separate federal offenses not specified in the initial interception order, there would be little difficulty in obtaining the requisite subsequent approval pursuant to § 2517. And where federal and state officers pursue an investigation jointly from its inception, we foresee little difficulty for the appropriate federal officer to obtain a separate order authorizing the interception of communica-tions relating to the federal offenses believed involved.[8]

This passage underscores that *Marion* involved § 2517(5). It simply did not deal with, and reached no conclusion about, the precise issue before us regarding § 2516(1).

A broader argument in the Legal Counsel Division's memorandum is that a construction of § 2516(1) permitting the FBI to participate in court-authorized interceptions relating to all offenses enumerated in that provision would be in tension with Title III's underlying purposes, which include placing restrictions on interceptions in order to protect citizens' privacy interests. To be consistent with such a purpose, courts have noted that Title III should be carefully construed. *See, e.g., United States* v. *Giordano,* 469 F.2d 522, 530 (4th Cir. 1972), *aff'd,* 416 U.S. 505 (1974). The Legal Counsel Division suggests that in order to be consistent with this canon of careful construction, it is necessary to interpret § 2516(1) as not allowing the FBI to participate in an intercep-tion unless it has general investigative responsibility for the offense at which an interception is directed.

We agree that Title III, and hence § 2516(1), must be carefully construed. We do not agree, however, that such a construction must include reading language into § 2516(1) that is not there, especially when the legislative history shows that one of the two major bills

_____

authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable. [Em-phasis added.]

[8] 535 F.2d at 707. *Cf. United States* v. *Manfredi,* 488 F.2d 588, 601 (2d Cir. 1973), *cert. denied* 417 U.S. 936 (1974) (noting that 18 U.S.C. § 2517 authorizes disclosure to appropriate law enforcement officials of evidence gained as a result of an authorized wiretap, and concluding: "If such information may be exchanged after the termination of the surveillance, we perceive no reason why that informa-tion may not be disclosed to cooperating agencies contemporaneously with its interception."); *United States* v *Masciarelli,* 558 F.2d 1064, 1067–68 (2d Cir. 1977); *United States* v. *Webster,* 473 F. Supp. 586, 600 (D. Md. 1979).

291

before Congress when it passed Title III contained language that would have led to the result suggested by the Legal Counsel Division, but Congress did not adopt it. The most fundamental canon of statutory construction is that plain language should control, especially in the absence of contrary legislative history.[9] The Legal Counsel Division has not pointed to such contrary legislative history. Nor have we become aware of any.

Furthermore, although it is plain that in enacting Title III Congress was sensitive to the need to protect citizens' privacy interests, it does not follow from this alone that § 2516(1) must be read in the manner suggested by the Legal Counsel Division. The Senate Judiciary Committee report states that "[t]o assure the privacy of oral and wire communications, title III prohibits all wiretapping and electronic surveillance *by persons other than duly authorized law enforcement officers* engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order. . . ." (Emphasis added). S. Rep. No. 1097, 90th Cong. 2d Sess. 66 (1968). In other words, as long as the officers engaged in an interception are "duly authorized" to do so and Title III's other requirements are met, the purpose of protecting the legitimate privacy interests would be satisfied. Thus, the argument advanced by the Legal Counsel Division ultimately returns us to the initial question that is the subject of this opinion: may the FBI be "duly authorized" to participate in § 2516(1) interceptions when the interception is directed at an offense listed in that subsection, even though the FBI lacks general investigative responsibility for the offense? The "purposive" approach of the Legal Counsel Division's memorandum does not ultimately assist in answering that question.

Another argument might have been made to support the position of the Legal Counsel Division. Section 2516(1) specifically refers to the procedures in § 2518 governing orders authorizing interceptions, and § 2518(1)(a) states that an application must identify "the investigative or law enforcement officer" making the application for an interception. 18 U.S.C. § 2510(7) defines the term "investigative or law enforcement officer" to include *"any officer of the United States* or of a State or political subdivision thereof, *who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter,* and any attorney authorized by law to prosecute or participate in the prosecution of such offenses . . . ." (Emphasis added.) It might be said that §§ 2518 and 2510(7), read together, contemplate that all officers covered by an application for an interception must be "empowered by

---

[9] A court interpreting a statute is bound by the " 'literal or usual meaning of its words' " unless this would lead to "'absurd results . . . or would thwart the obvious purpose of the statute.' . . " *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643 (1978), quoting *Commissioner* v. *Brown,* 380 U.S. 563, 571 (1965). *See also Southeastern Community College* v. *Davis,* 442 U.S. 397, 405 (1979); *Detroit Trust Co.* v. *The Thomas Barlum,* 293 U.S. 21, 38 (1934), *quoted in Fedorenko* v. *United States,* 449 U.S 490, 514 (1981).

law" *other than* § *2516(1)* to investigate an offense for which an interception authorization is sought.

The weakness in this argument is that it simply presupposes its conclusion: it *assumes* that an "investigative or law enforcement officer" for purposes of § 2518 could not be, in the context of an interception under § 2516(1) directed at narcotics offenses, an officer of the FBI. That is, of course, the question to be answered. It cannot be resolved simply by stating conclusorily that § 2516(1) could not be read to empower the FBI to participate in court-approved interceptions directed at the offenses listed in it. As noted above, under § 2516(1)'s most natural reading it in fact *does* authorize the FBI to participate in court-approved interceptions directed at any of the offenses listed in it.

## IV.

For all the reasons stated in this opinion, we do not read § 2516(1) to require the FBI to have general investigative responsibility for an offense listed in that subsection before the FBI may be judicially authorized to participate in an interception directed at such an offense, including narcotics offenses. Accordingly, in the type of case that gave rise to your opinion request to this Office, we conclude that, under § 2516(1), the FBI may be judicially authorized to participate in a court-approved interception directed at an offense noted in that provision.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
